**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| ROBERT JOHN MOES<br>    Plaintiff, | * |
| v. | *   CIVIL NO. RWT-05-2493 |
| K. GREEN, LAUNDRY SUPERVISOR<br>    Defendant. | * |
| | *** |

**MEMORANDUM OPINION**

Robert John Moes, a former U.S. Bureau of Prisons ("BOP") inmate, filed this 28 U.S.C. § 1331 civil rights action for damages on September 8, 2005. He alleges that while he was confined at the Federal Correctional Institution in Cumberland, Maryland ("FCI-Cumberland") on August 9, 2004, Defendant, a laundry room supervisor, wrote a false incident report that resulted in Plaintiff's placement in the "hole" for three days. Plaintiff claims that the action was taken in retaliation for exercising his First Amendment rights when he (i) refused to sign off on a work safety sheet and (ii) complained about the conditions in the laundry room. He further claims that his assignment to the hole without prior finding of facts violated his Fifth and Eighth Amendment rights.

Defendant has filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, construed as a Motion for Summary Judgment, arguing that Plaintiff's case is subject to dismissal for the failure to (i) timely exhaust all available remedies prior to filing this Complaint and (ii) allege a violation of a clearly established constitutional right. (Paper No. 11). Plaintiff has filed an Opposition response.[1] (Paper No. 17). The case may be decided on the pleadings and without

---

[1]   Plaintiff has also filed a Motion for Judgment and a "Notice of Rule 11." (Paper Nos. 13 & 14). He claims that Defendant defaulted by not filing a timely response and that the Office of the United States Attorney impermissibly delayed the case by not immediately accepting service on behalf of Defendant. (Id.). The Court concludes that Defendant filed his answer in a timely manner and finds no dilatory practices associated with counsel's decision to initially decline to accept service on behalf of Defendant. The Motion for Judgment and "Notice of Rule 11," construed as a Motion to Strike Defendant's dispositive motion, shall be denied.

oral hearing.  See Local Rule 105.6. (D. Md. 2004).   For reasons to follow, Defendant's Motion for Summary Judgment shall be granted.

## I.  Standard of Review

### Motion for Summary Judgment

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  If there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  Anderson, 477 U.S. at 250; see also Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987).  The moving party bears the burden of showing that there is no genuine issue of material fact.  See Fed. R. Civ. P. 56(c); Pulliam, 810 F.2d at 1286 (citing Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. See Tinsley v. First Union Nat'l Bank, 155 F.3d 435, 437 (4th Cir. 1998).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  "[A] complete
failure of proof concerning an essential element...necessarily renders all other   facts immaterial." Celotex, 477 U.S. at 323.  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. See Anderson, 477 U.S. at 256.

II.  Analysis

There is no dispute that during the month of August, 2004, Plaintiff was assigned to the FCI-Cumberland Laundry Department.  Defendant claims that on August 9, 2004, Plaintiff was given a 10-minute safety talk concerning the eye wash station in the Laundry Department.  (Paper No. 11, Ex. 2, Green Decl.).  Plaintiff refused to sign off on the Occupational Safety and Health Administration ("OSHA") safety form indicating that he had received the required safety talk.  (Id.).  Defendant claims that he contacted the Lieutenant's office to inform them of the incident and was advised to escort Plaintiff to the Lieutenant's office.  (Id.).  Green asserts he escorted Plaintiff, left him in the Lieutenant's office, and returned to the Laundry Department where he wrote an incident report citing Plaintiff with code 306 and 498 violations for "refusing to work, or accept a program assignment" and "interfering with a staff member in the performance of duties."  (Id.).

Plaintiff was placed in administrative detention on August 9, 2004, at 9:36 a.m. for investigation into the alleged code violations.  (Id., Ex. 1, Gottlieb Decl.).  Green affirms that he did not make the decision to place Plaintiff in administrative detention.  (Id., Ex. 2, Green Decl.)

On August 11, 2004, Plaintiff was provided a hearing on the incident report.  The Unit Disciplinary Committee ("UDC") found that the facts did not support the charges.  The incident report was expunged and Plaintiff was released from administrative detention on August 11, 2004, at approximately 10:20 a.m.  (Id., Ex. 1, Attachment E).

Plaintiff filed an informal request to staff complaining about Green's actions on August 9, 2004.   (Paper No. 11, Ex. 1, Attachment B).  On August 25, 2004, he filed another informal request inquiring into the status of his earlier request and asking for a remedy BP-9 form.  (Id.).  Staff responded to Plaintiff's requests on September 7, 2004, informing him that he must request a "BP-9" remedy form from his unit team.  (Id.).  On April 22, 2005, Plaintiff filed a remedy

3

concerning the August 9, 2004, incident report. The remedy was rejected at the institution level for untimeliness. (Id., Attachment B, Gottlieb Decl.). On May 5, 2005, Plaintiff filed an administrative remedy at the regional level. The Regional Office upheld the institution's rejection for untimeliness. (Id.). Finally, on May 16, 2005, Plaintiff filed a remedy at the central office level. The Central Office affirmed the prior administrative decisions. (Id.).

In his Opposition, Plaintiff asserts that Defendant did not provide him a ten-minute safety talk while in the laundry room. (Paper No. 17). He reiterates his allegation that Defendant filed a false and retaliatory incident report in response to Plaintiff's complaints about the safety of the FCI-Cumberland laundry room and refusal to sign off on the OSHA document. (Id.). Plaintiff again claims that a fact-finding hearing should have been conducted prior to his placement on administrative segregation. He seemingly alleges that he "suffered from loss of sleep" while on segregation. (Id.) In addition, Plaintiff claims that it was not his fault that he was not issued administrative remedy forms when he first requested them.[2] (Id.).

Clearly, Plaintiff did not comply with the administrative remedy time limits established for filing a BOP remedy under 28 C.F.R. § 542.14(a), and his failure to timely file BOP remedies does not satisfy 42 U.S.C. § 1997e exhaustion requirements. See Ross v. County of Bernalillo, 365 F.3d 1181, 1186 (10th Cir. 2004). Plaintiff claims, however, that he was repeatedly denied remedy forms and was not allowed to obtain remedy forms until several months later, at which time he filed his various remedies or "cop-outs." Even if this were true and Defendant would be estopped from

---

[2] Defendant claims that Plaintiff did not fully grieve his administrative remedy regarding the August, 2004, incident report in a timely manner. He asserts that the administrative remedy log from Plaintiff's unit shows that between January 26, 2005, and April 14, 2005, Plaintiff requested and received a BP-9 on nine separate occasions. This assertion relies on an exhibit (or exhibits) not electronically filed with the Court. Because the exhibit goes to the issue of 42 U.S.C. § 1997e exhaustion and this Court's final determination is not founded on that issue, the incomplete record is not fatal to Defendant's case.

4

arguing non-exhaustion, the Court concludes that Plaintiff has failed to establish a violation of a constitutional right.

Plaintiff complains that Defendant filed a false incident report on August 9, 2004. This allegation does not state a due process claim. In Freeman v. Rideout, 808 F.2d 949 (2nd Cir. 1986), the Second Circuit concluded that with regard to alleged falsified evidence, due process is satisfied where an inmate is afforded the opportunity to confront and challenge the alleged perjured testimony offered in the reports. Id. at 953. On August 11, 2004, Plaintiff received a hearing before the UDC, which found no evidence to support the rule violation charges. The incident report was expunged. Plaintiff therefore was provided opportunity to successfully challenge the incident report through the administrative process.[3]

Plaintiff claims that Defendant wrote the incident report in reprisal for his comments about the safety of the Laundry Department and his refusal to sign the OSHA form. Retaliation against an inmate for the exercise of a constitutional right states a claim under 42 U.S.C. § 1983. See American Civ. Liberties Union v. Wicomico County, 999 F. 2d 780, 784-86 (4th Cir. 1993). The inmate alleging retaliation "[b]ears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial motivating fact in the prison officials' decision...." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996). "'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleading alone.'" Gill v. Mooney, 824 F.2d 192, 194 (2d Cir. 1987) (quoting Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983)); see also Pierce v. King, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (conclusory allegations of retaliation insufficient to state claim).

---

[3] An inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. See Freeman, 808 F.2d at 951.

There is no dispute that Plaintiff was the only one of twelve inmates who refused to sign off on the form indicating that he had received training in regard to general safety and the eyewash station.  Defendant affirms that he wrote the incident report for failing to sign the form, believing that Plaintiff was violating prison policy.[4]  Plaintiff has failed to rebut the personal declarations and materials to prove that Defendant issued the incident report as a pay back for Plaintiff's complaints.

Plaintiff next complains that he was placed on the Special Housing Unit ("SHU") without prior fact-finding review and he remained housed in the SHU for 72-hour period.  The Court concludes that the assignment to SHU does not implicate a due process liberty interest.  A liberty interest may be created when government action imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).  Assignment of BOP inmates to the SHU for administrative or disciplinary reasons is not an unusual occurrence.  Plaintiff does not show that his three-day placement on the SHU caused him significant hardship.  The Court therefore finds no due process violation associated with the SHU assignment.

Plaintiff seemingly complains that his rights were violated by the fact that he was exposed to the conditions of the SHU.  He may prove an Eighth Amendment violation by showing that he was deprived of a basic human need which was objectively sufficiently serious and that prison officials acted with a sufficiently culpable state of mind to expose him to those conditions. See Strickler v. Waters, 989 F. 2d 1375, 1379 (4th Cir. 1993).  Only extreme deprivations are adequate

---

[4]  Plaintiff has failed to show injury due to the issuance of the incident report as the report was ordered expunged three days later.

to satisfy the object component of an Eighth Amendment claim.  See Hudson v. McMillian, 503 U.S. 1, 9 (1992).[5]

The key in determining whether prison conditions pass beyond legitimate punishment and become cruel and unusual is to examine is to examine the effect on the prisoner.  See Rhodes v. Chapman, 452 U.S. 337, 364 (1981).  Plaintiff was housed in SHU for three days.  Here, he voices no complaints regarding the conditions of his SHU stay, with the exception of indicating that he had difficulty sleeping.  This does not constitute a significant injury.  No Eighth Amendment violation has been demonstrated.

### III. Conclusion

For the aforementioned reasons a separate Order shall be entered granting Defendant's Motion for Summary Judgment and entering judgment in Defendant's favor and against Plaintiff.[6]

Date: 3/14/06                                      /s/
                                         ROGER W. TITUS
                                         UNITED STATES DISTRICT JUDGE

---

[5] Such deprivations may be demonstrated by producing evidence of a serious or significant physical or emotional injury resulting from the challenged conditions, see Strickler, 989 F. 2d at 1380-81; Rish v. Johnson, 131 F. 3d 1092, 1096 (4th Cir. 1997), or by demonstrating a substantial risk of such serious harm resulting from the unwilling exposure to the challenged conditions. See Helling v. McKinney, 509 U.S. 25, 33-35 (1993). A prisoner's short-term exposure to conditions which fall below objective contemporary standards of decency may constitute a de minimis deprivation for Eighth Amendment purposes. See Hutto v. Finney, 437 U.S. 678, 686-87 (1978); see also Smith v. Copeland, 87 F. 3d 265, 268-69 (8th Cir. 1996) (pre-trial detainee's claim of overflowed toilet and stench of human waste in his isolation cell for four days amounted to de minimis imposition on detainee's rights); Harris v. Fleming, 839 F.2d 1232, 1235-36 (7th Cir. 1988) (prison officials' failure to provide an inmate with toilet paper for 5 days, or with soap, toothbrush and toothpaste for 10 days did not constitute an Eighth Amendment violation).

[6] Because this Court finds no exceptional circumstances warranting the appointment of counsel, Plaintiff's February 16, 2006 letter, construed as a Motion for Appointment of a Federal Public Defender, shall be denied.